UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MIKE KASTRATI,

                Plaintiff,

        - against -                      21 Civ. 00481 (LGS)

M.E.G. ENTERPRISES, LTD. d/b/a NOVITA
RESTAURANT, MARCO FREGONESE,
and ELIZABETH YOSHIDA,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

==================================================================

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

==================================================================

                      VLADECK, RASKIN & CLARK, P.C.
                      Attorneys for Plaintiff
                      565 Fifth Avenue, 9th Floor
                      New York, New York 10017
                      (212) 403-7300

Of Counsel:

    Jeremiah Iadevaia
    Susanna Barron

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

PROCEDURAL HISTORY...................................................................................................... 10

ARGUMENT ........................................................................................................................... 11

I.    STANDARD OF REVIEW ............................................................................................ 11

II.    SUBJECT MATTER JURISDICTION........................................................................... 12

A.    The Court Has Jurisdiction Over Plaintiff's Discrimination Claims..................................... 12

B.    The Court Has Jurisdiction Over Plaintiff's BCL Claim ..................................................... 13

CONCLUSION........................................................................................................................ 17

1164264 v1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Achtman v. Kirby, McInerney & Squire, LLP,
    464 F.3d 328 (2d Cir. 2006)......................................................................................................15

Alonzo v. Chase Manhattan Bank, N.A.,
    25 F. Supp. 2d 455 (S.D.N.Y. 1998).......................................................................................11

Bobcar Media, LLC v. Aardvark Event Logistics, Inc.,
    354 F. Supp. 3d 375 (S.D.N.Y. 2018)....................................................................................11

Bracey v. Bd. of Educ. of City of Bridgeport,
    368 F.3d 108 (2d Cir. 2004)....................................................................................................12

Carter v. HealthPort Techs. LLC,
    822 F.3d 47 (2d Cir. 2016)......................................................................................................12

Cleveland v. Caplaw Enters.,
    448 F.3d 518 (2d Cir. 2006)....................................................................................................11

Ditullio v. Vill. of Massena,
    81 F. Supp. 2d 397 (N.D.N.Y. 2000)......................................................................................13

Gelles v. TDA Indus., Inc.,
    No. 90 CIV. 5133 (MBM), 1991 WL 39673 (S.D.N.Y. Mar. 18, 1991)................................15

Hernandez v. Conriv Realty Assocs.,
    182 F.3d 121 (2d. Cir. 1999)...................................................................................................17

Katzenberg v. Commercial Kitchen Designs, Inc.,
    No. 09-CV-173 (ILG), 2011 WL 13299959 (E.D.N.Y. Sept. 6, 2011)...................................14

Matter of Kemp & Beatley, Inc.,
    64 N.Y.2d 63, 473 N.E.2d 1173 (1984)..................................................................................15

Lepore v. New York Hotel Trades Council, Emp. Benefit Funds,
    No. 05 CIV. 6165 (HB), 2005 WL 3030839 (S.D.N.Y. Nov. 10, 2005)................................16

Montefiore Med. Ctr. v. Teamsters Loc. 272,
    642 F.3d 321 (2d Cir. 2011)..........................................................................................2, 12, 16

Munguia v. Bhuiyan,
    No. CV 2011 3581 JBW MDG, 2012 WL 526541 (E.D.N.Y. Feb. 16, 2012).......................16

1164264 v1

Pfizer, Inc. v. United States,
   No. 16 CIV. 1870 (LGS), 2016 WL 6902196 (S.D.N.Y. Oct. 31, 2016).........................11, 12

Promisel v. First Am. Artificial Flowers, Inc.,
   943 F.2d 251 (2d Cir. 1991)................................................................................12, 13, 14

Straka v. Arcara Zucarelli Lenda & Assocs. CPAs, P.C.,
   62 Misc. 3d 1064, 92 N.Y.S.3d 567 (N.Y. Sup. Ct. 2019) .......................................14

Thomas v. Eony, LLC,
   No. 13–CV–8512 (JPO), 2015 WL 1809085 (S.D.N.Y. Apr. 21, 2015)................................15

Willman v. Zelman & Assocs., LLC,
   No. 11 CIV. 1216 KBF, 2012 WL 811512 (S.D.N.Y. Mar. 12, 2012) ...................................13

Young v. New York City Transit Auth.,
   903 F.2d 146 (2d Cir. 1990) (Def. Br. ) .................................................................15

**Statutes**

28 U.S.C. § 1331.................................................................................................12

28 U.S.C. § 1343.................................................................................................12

28 U.S.C. § 1367.................................................................................................12

The Civil Rights Act of 1964 Title VII....................................................................1, 10, 12

Section 1981 of the Civil Rights Act of 1966, 42 U.S.C. § 1981 ........................................1, 10, 12

New York Business Corporation Law § 1104-a(a)(1)........................................................... *passim*

New York State Human Rights Law, Exec. Law § 296 et seq. ............................................1, 10, 12

Administrative Code of the City of New York § 8-101 et seq. ............................................1, 10, 12

**Other Authorities**

Fed. R. Civ. P. 12(b) .................................................................................................11, 12

<u>PRELIMINARY STATEMENT</u>

Plaintiff Mike Kastrati ("plaintiff" or "Kastrati") respectfully submits this Memorandum of Law in Opposition to the Motion of defendants M.E.G. Restaurant Enterprises Ltd. d/b/a Novita Restaurant ("Novita" or the "restaurant"), Marco Fregonese ("Fregonese"), and Elizabeth Yoshida ("Yoshida") (collectively, "defendants") seeking partial judgment on the pleadings (Dkt. 29).

Plaintiff has brought this action against defendants asserting employment discrimination and retaliation claims under federal, state, and local laws ("employment discrimination claims") and a shareholder claim seeking dissolution of Novita under the New York Business Corporation Law (the "BCL claim").[1] Plaintiff, who is Albanian and was a long-tenured employee at Novita, worked his way up from waiter in 2006 to manager and shareholder of the restaurant. After Kastrati received his promotion to manager, however, Fregonese and Yoshida, co-owners and managing partners of Novita, commenced a campaign of discrimination and harassment against Kastrati because he is Albanian and not Italian. Following plaintiff's protected discrimination complaints, defendants demoted Kastrati and, ultimately, fired him in April 2019. In addition, defendants denied Kastrati access to financial records that he was entitled to, mismanaged corporate assets, and underreported Novita's revenue.

Defendants have moved to dismiss plaintiff's shareholder claim (or BCL claim) only and not his other claims. Defendants contend that, even though this Court possesses jurisdiction to

---

[1] Specifically, plaintiff alleges claims of discrimination on the basis of national origin and race and retaliation for opposition to unlawful practices in violation of Section 1981 of the Civil Rights Act of 1966, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964 ("Title VII"); the New York State Human Rights Law, Exec. Law § 296 <u>et seq.</u> (the "State Law"); and the Administrative Code of the City of New York § 8-101 <u>et seq.</u> (the "City Law"). (<u>See</u> Complaint, filed January 19, 2021 (Dkt. 1) (the "Complaint" or "Compl.") ¶¶ 7-8) In addition, plaintiff seeks judicial dissolution of Novita pursuant to New York Business Corporation Law ("BCL") § 1104-a(a)(1) based on the oppressive conduct of defendants Fregonese and Yoshida, co-owners and majority shareholders of Novita, toward him as a minority shareholder. (<u>See id.</u> ¶ 10)

consider Kastrati's federal and state employment discrimination claims, there is no subject matter jurisdiction over the shareholder claims.    Contrary to defendants' argument, the federal employment discrimination claims and the state BCL claim "stem from the same 'common nucleus of operative fact[s]." <u>Montefiore Med. Ctr. v. Teamsters Loc. 272</u>, 642 F.3d 321, 332 (2d Cir. 2011).  Indeed, the employment discrimination and shareholder claims involve overlapping facts, events, and legal theories.  Defendants in arguing for dismissal of the BCL claim disregard key allegations in the Complaint that demonstrate the connection between the claims, including that defendants subjected Kastrati to shareholder oppression by discriminating against him based on his race and national origin. (<u>See</u> Compl. ¶ 149)  Therefore, the claims are sufficiently linked to confer this Court with jurisdiction and defendants' motion should be denied.

<u>STATEMENT OF FACTS</u>

Kastrati worked for Novita, an Italian restaurant in Manhattan, from 2006 until defendants fired him on April 3, 2019.  (Compl. ¶¶ 15, 16, 31, 32)  Kastrati is also a minority shareholder of the restaurant.  He currently owns 20 percent of Novita's shares.  (<u>Id.</u> ¶ 15)

A. <u>Kastrati's Initial Employment at Novita</u>

In 2006, Kastrati began working at Novita.  (Compl. ¶ 31)  Between 2006 and 2018, Kastrati was a waiter at Novita.  During this time, he primarily reported to Giuseppe Delpiano ("Delpiano"), who was born in Italy and was a  manager at the restaurant at the time.  (<u>Id.</u> ¶ 36)  Kastrati had worked with Delpiano previously at other restaurants and he was responsible for bringing Kastrati to Novita.  (<u>Id.</u>)

When Kastrati joined Novita, the principal owner of Novita was Fregonese, an Italian man, who was, and continues to be, the head chef of Novita.  (Compl. ¶ 34)  Fregonese's romantic

partner, Yoshida, also owned shares in the restaurant.  (Id. ¶ 35)  Also, Delpiano was a shareholder at that time.  (Id. ¶ 36)

B.  Promotion to Manager and Share Purchases

For 12 years between 2006 and 2018, Kastrati consistently received positive feedback about his performance, got along well with other staff, and developed strong relationships with customers.  (Compl. ¶ 38)

In March 2017, Kastrati, after obtaining a finance degree, received an entry level job offer as a Financial Representative for Foresters Financial Services.  (Compl. ¶ 39)  Kastrati accepted the position, but then gave up the job after Delpiano convinced him to remain working at Novita. (Id.)  Delpiano told Kastrati that he planned to relocate to Cuba and that, when he moved, Kastrati would have an opportunity to become manager and purchase his shares in the restaurant.  (Id.)

In July 2018, Delpiano left Novita and Kastrati purchased his shares in Novita pursuant to an agreement dated July 6, 2018.  (Compl. ¶ 40) Currently, the Novita shares are allocated as follows:  Fregonese owns 57.5 percent of the shares; Yoshida owns 22.5 percent of the shares; and Kastrati owns 20 percent of the shares.  (Id.)

When Kastrati purchased the shares, consistent with the arrangement that he made with Delpiano, which Fregonese approved, the restaurant promoted him to manager.  (Compl. ¶ 41) Business at Novita improved soon after Kastrati became manager, including increased average sales, an improved restaurant rating on OpenTable, and decreased expenses each month.  (Id. ¶ 43)

Even though Kastrati became a shareholder, he continued to be defendants' employee. (Compl. ¶¶ 44-52) Since Kastrati became a shareholder in 2018, Fregonese and Yoshida were managing partners and made all important decisions about the restaurant.  (Id. ¶¶ 45-52)  For example, Fregonese and Yoshida controlled virtually all aspects of Kastrati's employment as a

3

manager, including setting his work schedule and determining his salary and other compensation. (Id. ¶ 46)  Fregonese and Yoshida also limited Kastrati's access to the restaurant's confidential records, excluded Kastrati from monthly meetings about finances, and failed to seek his input in making staff decisions, including staff hiring, firing, and disciplinary determinations.  (Id. ¶¶ 47-52)

### C.  Fregonese and Yoshida Waste and Misappropriate Novita's Assets

On information and belief, Fregonese and Yoshida concealed financial information from Kastrati to cover up their waste and misappropriation of Novita's assets.  (Compl. ¶¶ 53-58)

Based on the profit and loss statements that defendants provided to Kastrati, Fregonese and Yoshida have reported several questionable expenses, including expenses for travel, uniforms, repairs and maintenance, restaurant supplies, office supplies, and meals. (Compl. ¶¶ 54-57) Kastrati is not aware of any basis for spending at the level defendants reported.  (Id. ¶ 57)

Furthermore, on information and belief, Fregonese and Yoshida have mispresented corporate profits to avoid paying Kastrati profit distributions to which he is entitled. (Compl. ¶ 58) Since October 2018, even though the restaurant's performance has improved, Kastrati has received three profit distributions totaling less than $5,000.  (Id.)

### D.  Discrimination Against Non-Italian Employees

Fregonese and Yoshida repeatedly subjected non-Italian employees, including several Albanian staff members, to biased treatment.  (Compl. ¶¶ 59-65)

For example, between January and March 2019, the restaurant fired multiple non-Italian employees without justification. (Compl. ¶¶ 60-61)  In contrast, Fregonese and Yoshida repeatedly extended preferential treatment to the Italian employees.  (Id. ¶ 62) For example, on or about February 10, 2019, Yoshida sent Kastrati a text message saying that the bussers had been

underperforming and that the restaurant was becoming too casual. (Id.) Yoshida focused her criticism on the bussers rather than the waitstaff. (Id.) Most of the waiters at Novita are Italian; the restaurant's bussers, however, are from Latin America. (Id.) Yoshida also said on multiple occasions that Novita should hire more young, Italian waiters. (Id. ¶ 63)

E.    Defendants' Discriminatory Treatment Against Kastrati

Around the time Delpiano left Novita and Kastrati became a manager, in July 2018, Yoshida took a more active role in running the restaurant. (Compl. ¶ 66) Almost immediately after Kastrati acquired shares in the restaurant, Fregonese and Yoshida targeted Kastrati for discrimination and harassment because he is not Italian. (Id. ¶¶ 66-75) For example:

- In or around March 2018, Fregonese pressured Kastrati to legally change his first name from "Muhamet," a Muslim name, to "Mike." Fregonese claimed that Kastrati should change his first name because, as a shareholder, the restaurant would add Kastrati to the lease when Novita renewed its lease. Fregonese told Kastrati that he was concerned that the Jewish owners of the building would not want the paperwork to include a Muslim name. (Compl. ¶ 67)

- In or around July 2018, Fregonese told Kastrati that he must purchase a new wardrobe because the way he dressed was not "Italian enough" for Novita. (Compl. ¶ 68)

- In addition, Yoshida said to Kastrati on multiple occasions that he would not be successful at Novita because he is not Italian, because he did not look Italian, and because of his "nasty" Eastern European accent. (Compl. ¶ 69)

- On one occasion, Yoshida said, in sum and substance, "You don't get it. I never wanted you here. You are not Giuseppe [Delpiano]." Delpiano was born in Italy. (Compl. ¶ 70)

- In or around October 2018, Yoshida made additional biased comments about Kastrati's accent. She said, in sum and substance, that Kastrati should have taken the finance job at Foresters Financial Services because he would not need to talk, and no one would be forced to hear his accent. (Compl. ¶ 72)

- In or around November 2018, Yoshida complained that the restaurant did not have enough Italian waiters even though only one waiter was not Italian. Yoshida also said that she wanted all the waiters and the manager (Kastrati, at the time) to be Italian. Yoshida also said to Kastrati, in sum and substance, "Mike [Kastrati], you just don't get it; I want to clean all this shit out." (Compl. ¶ 73)

- In December 2018, Yoshida ate at the restaurant almost every night. She also made negative statements about Kastrati's accent during this period. She said, in sum and substance, "can't you work on that accent, it sounds terrible" and "please stop talking to customers because your accent is disgusting." (Compl. ¶ 74)

- On December 31, 2018, in front of Kastrati's wife, Yoshida said about Kastrati, "he's just not Italian" and "his accent hurts my ears." (Compl. ¶ 75)

F.  Escalating Hostile Work Environment

In or around January 2019, Fregonese and Yoshida invited Kastrati to attend lunch at another restaurant. (Compl. ¶ 76) They used this lunch as an opportunity to attack and humiliate him, including saying to Kastrati that he should speak to the daytime manager because of her "wonderful English." (Id.)

During a meeting on or about February 5, 2019, Yoshida criticized Kastrati because he is not Italian, and said that, no matter what he did, he would not be successful because he was not Italian, did not speak the language, and did not understand the culture. (Compl. ¶ 77) Yoshida

told Kastrati that he was narrowminded, everyone other than "creepy Jews" could tell his "swarmy charm" was artificial, and he had too large of an ego, which was only "good for old Jews and old people." (Id.)

On or about February 7, 2019, Yoshida sent a text message to Kastrati setting different rules for Italian employees in communicating with customers. (Compl. ¶ 78) She said that only Italian employees may say "buona sera" (which means "good evening" in Italian); told Kastrati not to pretend to be Italian by treating customers "Soprano style"; and directed Kastrati not to hug customers nor to be too friendly.  (Id.)  To Kastrati's knowledge, she did not ask any employees other than Kastrati to follow these rules. (Id.)

On or about February 10, 2019, Yoshida and two other employees made discriminatory and derogatory comments about Kastrati at Novita.  (Compl. ¶ 79)  They mocked Kastrati's accent; said that Kastrati suffered from "cultural problems" and "cultural dishonesty" because he is Albanian and from Kosovo; and discussed that Kastrati supposedly did not understand the trends in New York City because he is from the "Eastern Bloc."  (Id.)  They called Kastrati an "asshole" and a "moron."  (Id.)

Kastrati complained to Fregonese on multiple occasions about Yoshida's ongoing unlawful harassment and discrimination, including in October 2018, in December 2018, and on or about February 10, 2019.  (Compl. ¶ 81)  On these occasions, Fregonese admitted that he was aware of Yoshida's misconduct, but told Kastrati that he needed to accept her mistreatment.  (Id.)

G. Defendants Continue to Discriminate Against Kastrati and Retaliate Against Him

By letter dated February 28, 2019, Kastrati complained through counsel about defendants' unlawful discrimination against him. (Compl. ¶ 82) Immediately upon receiving this letter complaining about unlawful discrimination, defendants escalated their discrimination and began

retaliating against Kastrati.  (Id. ¶ 83) Within an hour of receiving the letter on March 1, 2019, defendants demoted Kastrati from manager and to "host."  (Id.)  Fregonese also prohibited Kastrati from addressing staff as a manager, took away his responsibility for determining the staff schedule, and failed to notify plaintiff about staff decisions.  (Id. ¶¶ 83, 85)  Fregonese further admonished Kastrati not to speak to him anymore.  Fregonese said that Kastrati should talk to his lawyer and that he would see him in court.  (Id. ¶ 83)  In addition, also on March 1, 2019, Fregonese provided Kastrati with a letter informing him that Yoshida would be taking on a greater role in the day-to-day management of the restaurant.  (Id. ¶ 84)  Kastrati understood this letter to mean that defendants were reassigning Kastrati's management duties to Yoshida.  (Id.)

On March 1, 2019 and in the days and weeks thereafter, defendants engaged in other forms of retaliation, including soliciting negative feedback about Kastrati from other employees and directing staff to treat Kastrati like a pariah by ignoring him. (Compl. ¶ 86) Also, on or about March 1, 2019, Fregonese and Yoshida removed Kastrati's access to Novita's surveillance camera system and point of sales system by changing the passwords and not providing him with the new log-in information.  (Id. ¶ 87)

Kastrati complained about the ongoing discrimination and retaliation via a letter from his lawyer dated March 14, 2019. (Compl. ¶ 88) In response to the complaint, defendants further escalated the retaliation, harassment, and discrimination against Kastrati.  (Id. ¶ 89)  For example, in a letter from Novita's counsel dated March 26, 2019, defendants made several threats and a string of false accusations against Kastrati.  (Id. ¶ 89)  Specifically, defendants accused Kastrati of excessive alcohol consumption at work, giving free alcohol to customers, poor performance, and making inappropriate sexual overtures toward younger female employees. (Id.)  As set forth in the Complaint, Novita fabricated these claims.  (Id. ¶¶ 90-94)

H.  <u>Novita Fires Kastrati</u>

By email dated April 3, 2019, defendants made additional false allegations against Kastrati. (Compl. ¶ 95)  Defendants erroneously claimed that Kastrati's "alcohol consumption ha[d] grown increasingly pronounced and brazen." (<u>Id.</u>)  Defendants went so far as to accuse Kastrati of driving home drunk, which was untrue. (<u>Id.</u>)

Defendants also stated that they would not allow Kastrati to enter the restaurant again until he provided them with "written assurances that [he] will not consume any alcohol while working, nor will [he] show up at work intoxicated." (Compl. ¶ 96)  To Kastrati's knowledge, defendants have not required other employees to provide such assurances and has not subjected anyone else to these standards. (<u>Id.</u>)

Before Kastrati had a chance to respond to this retaliatory request, defendants fired him. (Compl. ¶ 96) Two hours after defendants' April 3 email, Kastrati arrived at the restaurant for work at his scheduled start time. (<u>Id.</u> ¶ 97) Fregonese immediately told Kastrati that he no longer worked at Novita. (<u>Id.</u>)  With Kastrati's employment terminated, Kastrati left the restaurant and returned home. (<u>Id.</u>)  In addition, in early April 2019, defendants cut off Kastrati's access to Novita's OpenTable account and therefore plaintiff could not obtain any information about reservations at the restaurant. (<u>Id.</u> ¶ 98)

Kastrati told defendants multiple times that Kastrati was ready, willing, and able to work, but Novita refused to allow him to do so. (Compl. ¶ 100) On or about April 6, 2019, Yoshida and Fregonese told other employees during a staff-wide meeting that defendants had fired Kastrati. (<u>Id.</u> ¶ 101)  On information and belief, defendants replaced Kastrati as manager with an Italian employee. (<u>Id.</u> ¶ 102)

I.   Defendants Continue to Conceal Novita's Finances

Since firing Kastrati, defendants have continued to hide Novita's records from Kastrati. (Compl. ¶¶ 103-09)

On January 2, 2020, pursuant to New York law, Kastrati requested that defendants provide him with access to Novita's financial records, including documentation regarding the questionable expenses on Novita's profit and loss statements, as well as records reflecting the restaurant's revenue. (Compl. ¶ 104)  Defendants, however, refused to produce the requested documents.  (Id. ¶ 105)  On January 7, 2020, defendants accused Kastrati, without basis, of not acting in "good faith" in making his request for Novita's financial records.  (Id.) Defendants have, to date, failed to provide Kastrati with any financial information concerning the restaurant beyond its profit and loss statements. (Id.)

Moreover, more recently, defendants have stopped providing Kastrati with Novita's profit and loss statements, even though he remains a shareholder.  (Compl. ¶ 106) The most recent profit & loss statement that Kastrati received, at the end of August 2020, reflected Novita's purported profits through June 2020.  (Id.)

PROCEDURAL HISTORY

Plaintiff initiated this action on January 19, 2021 by filing the Complaint.  Plaintiff alleges that defendants' discrimination and retaliation against him violated the employment discrimination laws, including Section 1981, Title VII, the State Law, and the City Law.  Plaintiff alleges that defendants targeted him because of his national origin and race by subjecting him and other non-Italian employees to different standards and by forcing him to endure repeated biased comments and other mistreatment.  (Id.  ¶¶ 66-81, 110-128) Plaintiff further alleges that following his

protected discrimination complaints, defendants demoted him and, ultimately, fired him. (Id. ¶¶ 82-102, 129-147)

In addition, plaintiff seeks judicial dissolution of Novita pursuant to the BCL. (See, e.g., Compl. ¶¶ 66-102, 148-152) Plaintiff alleges several grounds for judicial dissolution. For example, Kastrati asserts that Fregonese and Yoshida prevented Kastrati from serving as a manager and employee of Novita and failed to treat Kastrati with equal dignity and respect. (Id. ¶¶ 66-102, 149) Kastrati further alleges that Fregonese and Yoshida's actions frustrated Kastrati's reasonable expectations as a shareholder, which constitutes shareholder oppression under the BCL. (Id. ¶ 149)

ARGUMENT

## I.     STANDARD OF REVIEW

"Although subject matter jurisdiction is normally challenged under 12(b)(1), it may also be raised on a motion pursuant to Rule 12(c)." Alonzo v. Chase Manhattan Bank, N.A., 25 F. Supp. 2d 455, 457 (S.D.N.Y. 1998). The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. See Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 354 F. Supp. 3d 375, 378 (S.D.N.Y. 2018) ("[W]here a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion." ); see also Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (standard for Rule 12(c) motion the same as that for a Rule 12(b)(6) motion for failure to state a claim).

In deciding motions to dismiss under Rule 12(b)(1), "a court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff." Pfizer, Inc. v. United States, No. 16 CIV. 1870 (LGS), 2016 WL 6902196, at *1 (S.D.N.Y. Oct. 31, 2016) (citing Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 403 (2d Cir. 2014)). "A plaintiff

11

has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." Id. When a motion under Rule 12(b)(1) is based solely on the complaint, however, "the plaintiff has no evidentiary burden," and the court should evaluate whether the complaint alleges facts that plausibly suggest that the court has subject matter jurisdiction. Carter v. HealthPort Techs. LLC, 822 F.3d 47, 56 (2d Cir. 2016).

Here, the Complaint plausibly pleads that this Court possesses subject matter jurisdiction over plaintiff's federal and state claims pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367.

## II.    SUBJECT MATTER JURISDICTION

Defendants erroneously argue that plaintiff's BCL claim should be dismissed because this Court purportedly lacks subject matter jurisdiction to consider the claim. As set forth below, this Court has supplemental jurisdiction over plaintiff's BCL claim.

Under 28 U.S.C. § 1367(a), federal courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, "a federal court must first have before it a claim sufficient to confer subject matter jurisdiction." Montefiore Med., 642 F.3d at 332. In addition, "the federal claim and state claim must stem from the same 'common nucleus of operative fact.'" Id. "A federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while not automatic, is a favored and normal course of action." Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 254 (2d Cir. 1991).

### A.    The Court Has Jurisdiction Over Plaintiff's Discrimination Claims

As defendants have conceded (Dkt. 25 at 2), this Court has subject matter jurisdiction over Kastrati's federal Title VII and Section 1981 claims. See Bracey v. Bd. of Educ. of City of Bridgeport, 368 F.3d 108, 113 (2d Cir. 2004) (Under 28 U.S.C. § 1331, "federal courts have

original jurisdiction over cases 'arising under' federal law," and a claim arises under federal law where "federal law creates the plaintiff's asserted cause of action."). !

Moreover, defendants do not dispute (Dkt. 25 at 1 n. 1), nor could they, that this Court possesses supplemental jurisdiction over plaintiff's State and City Law employment discrimination claims. See Promisel, 943 F.2d at 254 (holding that State Law age claim "clearly derive[d] from the same nucleus of operative fact as [plaintiff's] federal ADEA claim"); Ditullio v. Vill. of Massena, 81 F. Supp. 2d 397, 409 (N.D.N.Y. 2000) (same).

B.  The Court Has Jurisdiction Over Plaintiff's BCL Claim

Defendants only seek dismissal of Kastrati's BCL claim. Defendants contend that plaintiff's BCL claim "does not overlap" with his employment discrimination and retaliation claims under federal law and thus this Court has no basis to exercise pendent jurisdiction. (Defendants' Memorandum of Law in Support of Their Motion for Judgment on the Pleadings (Dkt. 31) ("Def. Br.") at 8)  Defendants' argument should be rejected.

The federal discrimination and state BCL claims arise from the "same common nucleus of operative facts" because "these claims turn on the same facts and circumstances." Willman v. Zelman & Assocs., LLC, No. 11 CIV. 1216 KBF, 2012 WL 811512, at *4 (S.D.N.Y. Mar. 12, 2012).  First, the Complaint plausibly alleges that defendants' inequitable treatment of plaintiff, which underlies his federal discrimination and retaliation claims, is the same conduct that forms the basis of his petition for judicial dissolution as a remedy for shareholder oppression.  (See, e.g., Compl. ¶¶ 66-102 (providing examples of discriminatory and retaliatory mistreatment); id. ¶ 149 (alleging that Fregonese and Yoshida engaged in shareholder oppression by "failing to treat Kastrati with equal dignity and respect"))

13

New York law obligates majority shareholders "to treat all shareholders . . . equitably and fairly" and to discharge responsibilities with "'conscientious fairness, morality and honesty in purpose.'" Katzenberg v. Commercial Kitchen Designs, Inc., No. 09-CV-173 (ILG), 2011 WL 13299959, at *4 (E.D.N.Y. Sept. 6, 2011) (internal citations omitted). Under this theory of "equal dignity," courts have held that discriminatory treatment may constitute oppressive conduct sufficient to support a petition for judicial dissolution. See Straka v. Arcara Zucarelli Lenda & Assocs. CPAs, P.C., 62 Misc. 3d 1064, 92 N.Y.S.3d 567 (N.Y. Sup. Ct. 2019) (holding that disrespectful and unfairly disproportionate treatment of a female minority shareholder by the male majority constituted corporate oppression pursuant to BCL § 1104-a). Here, plaintiff alleges that defendants subjected him to shareholder oppression by discriminating against him based on his race and national origin. Thus, the employment discrimination and BCL claims are sufficiently connected.

Second, plaintiff's employment discrimination and BCL claims both concern Kastrati's allegations that defendants fired plaintiff from his position as a manager. Specifically, plaintiff alleges that contrary to his expectations as a minority shareholder, defendants terminated his employment. (Compl. ¶ 2 (alleging that, as part of his deal to buy shares in the restaurant, "Kastrati expected that he would have continued employment as a manager"); id. ¶ 41 (alleging that "[w]hen Kastrati purchased the shares, consistent with the arrangement that he made with Delpiano, which Fregonese approved, the restaurant promoted him to manager."); id. ¶ 149 (alleging that Fregonese and Yoshida "frustrated Kastrati's reasonable expectations as a shareholder" "by preventing Kastrati from serving as a manger and employee of Novita")) While defendants dispute that they discharged Kastrati (Compl. ¶ 99), if plaintiff proves otherwise such a finding will support both his employment discrimination and BCL claims. See Promisel, 943 F.2d at 254 (exercising

14

supplemental jurisdiction where plaintiff's federal ADEA claim and state law claims were based

on plaintiff's employment termination); <u>Gelles v. TDA Indus., Inc.</u>, No. 90 CIV. 5133 (MBM),

1991 WL 39673, at *7 (S.D.N.Y. Mar. 18, 1991) ("A shareholder who reasonably expected that

ownership in the corporation would entitle him or her to a job . . . would be oppressed in a very

real sense when others in the corporation seek to defeat those expectations . . . .").[2]

In seeking dismissal, defendants attempt to distinguish plaintiff's experience as an

employee and as a shareholder. (Def. Br. at 2, 8)  But defendants' contention completely disregards

plaintiff's allegations that defendants' race and national origin discrimination against Kastrati not

only violated the employment laws, but also that defendants' discrimination constituted

shareholder oppression that justifies dissolution. (<u>See, e.g.</u>, Compl. ¶ 149) Moreover, while

defendants are correct that plaintiff's BCL claim is based, in part, on defendants' refusal to grant

him access to Novita's financial records and their mismanagement of corporate assets,[3] those other

allegations do not deprive the Court of jurisdiction. Even though "there would surely be some facts

at issue" for the BCL claim that would not be at issue for the employment discrimination claims,

supplemental jurisdiction is still appropriate. <u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464

F.3d 328, 336 (2d Cir. 2006).[4]

---

[2] <u>See also</u> <u>Matter of Kemp & Beatley, Inc.</u>, 64 N.Y.2d 63, 73, 473 N.E.2d 1173, 1179 (1984) (finding a shareholder's "reasonable expectations" to be an appropriate means of determining oppressive conduct for purposes a judicial dissolution claim under BCL §1104(a)).

[3] <u>See, e.g.</u>, Compl. ¶ 149 (alleging that dissolution is justified because defendants denied Kastrati access to corporate records and because defendants wasted corporate assets).

[4] Defendants' reliance (Def. Br. at 7) on <u>Thomas v. Eony, LLC</u>, No. 13–CV–8512 (JPO), 2015 WL 1809085 (S.D.N.Y. Apr. 21, 2015) is misplaced.  The Court in <u>Thomas</u> refused to exercise supplement jurisdictions over the plaintiff's state discrimination and tort claims because they involved significantly different sets of facts that had little to do with the plaintiff's federal wage and hour claim. <u>Id.</u> at *6; <u>see also</u> <u>Young v. New York City Transit Auth.</u>, 903 F.2d 146, 164 (2d Cir. 1990) (Def. Br. at 7) ("The federal constitutional claim raises legal issues completely unrelated to those presented by the state constitutional claim."). Here, however, there is a close connection

Because plaintiff's claims are based largely on the same set of events that took place during his time as an employee and minority shareholder of Novita, his federal discrimination claims and his BCL claims share a "'common nucleus of operative fact' such that [he] 'would ordinarily be expected to try them all in one judicial proceeding.'" Montefiore Med. Ctr., 642 F.3d at 332 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). Indeed, discovery for the BCL claim "would require much of the same information that plaintiff would seek to prove" his employment discrimination claims. Munguia v. Bhuiyan, No. CV 2011 3581 JBW MDG, 2012 WL 526541, at *3 (E.D.N.Y. Feb. 16, 2012).

Under the circumstances, Kastrati's federal and state claims are sufficiently related to provide the Court with subject matter jurisdiction over his BCL claim. See Munguia, 2012 WL 526541, at *3 (exercising supplemental jurisdiction over state law discrimination claims where plaintiff asserted federal wage and hour claims because plaintiff alleged that defendants decreased his wages due to unlawful discrimination); Lepore v. New York Hotel Trades Council, Emp. Benefit Funds, No. 05 CIV. 6165 (HB), 2005 WL 3030839, at *6 (S.D.N.Y. Nov. 10, 2005) (exercising supplemental jurisdiction over plaintiff's state law discrimination claims where Court had federal question jurisdiction over plaintiff's FMLA interference claim). !

---

between Kastrati's employment discrimination claims and his BCL claim because they involve overlapping facts, events, discovery, and legal theories.

CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings should be denied.[5]

Dated: New York, NY
       May 24, 2021

                                        VLADECK, RASKIN & CLARK, P.C.


                                        By:     _/s/ Jeremiah Iadevaia_____
                                                Jeremiah Iadevaia
                                                Susanna Barron
                                                565 5th Avenue, 9th Floor
                                                New York, NY 10017
                                                (212)403-7300
                                                Attorneys for Plaintiff

---

[5] If the Court holds that it does not have supplemental jurisdiction over plaintiff's BCL claim, the claim should be dismissed without prejudice and plaintiff should be permitted to refile in state court. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d. Cir. 1999) ("After further consideration of the issue, we now conclude that where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

1164264 v1