```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/13/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MIKE KASTRATI,

                              Plaintiff,

-against-

M.E.G. RESTAURANT ENTERPRISES LTD.
d/b/a NOVITA RESTAURANT, MARCO
FREGONESE, and ELIZABETH YOSHIDA,

                              Defendants.
-----------------------------------------------------------------X

**OPINION AND ORDER ON ATTORNEYS' FEES AND COSTS**

1:21-CV-00481 (KHP)

KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

## FACTUAL BACKGROUND[1]

Plaintiff Mike Kastrati, who is Albanian, was employed by Defendant Novita Restaurant ("Novita"), an Italian restaurant, from in or about 2006 through April 3, 2019. (Pl. Br. 1.) He started as a waiter and, by 2018, had worked his way up to a manager position. At the time he became a manager, Novita's then owners, Defendants Marco Fregonese and Elizabeth Yoshida, offered Kastrati the opportunity to buy a twenty-percent share in the business. (*Id.*) Kastrati accepted the offer and made a capital investment in the amount of $95,000, becoming a minority owner.

The transition to manager and part-owner did not go well. Kastrati claims that Fregonese and Yoshida began a campaign of discrimination and harassment against him because he is not Italian. (*Id.*) Additionally, contrary to Kastrati's expectations, Fregonese and

---

[1] The factual background is based on the allegations in the complaint. No factual findings have been made because there is a settlement without admission of liability.

1

Yoshida did not treat him as a co-owner and refused to allow him access to the financial records for the business. Instead, they prepared vague profit and loss statements that included inexplicable expenses and appeared to underreport revenue. When Kastrati complained about Fregonese's and Yoshida's conduct, they allegedly retaliated against him by demoting him from manager to host, making false allegations against him and ultimately terminating his employment. (*Id.* at 2.) They hired an Italian man to replace Kastrati as manager. After Kastrati commenced litigation against Defendants, Fregonese and Yoshida effectuated a reverse stock split to remove Kastrati as an officer and shareholder of the business. They paid him $20,000 less than his initial investment in the business. (*Id.* at 3.)

## **PROCEDURAL BACKGROUND**

Kastrati retained Vladeck, Raskin & Clark, P.C. ("Vladeck") to represent him in February 2019 due to his concerns about discrimination and retaliation. (Pl. Br. 3.) The Vladeck firm sent a letter to Defendants on Kastrati's behalf in March regarding his claims and attempted to negotiate a resolution. When no resolution could be reached, the Vladeck firm filed a Charge of discrimination with the United Stated Equal Employment Opportunity Commission ("EEOC") on Kastrati's behalf. (*Id.* at 3.) Shortly thereafter, Defendants terminated Kastrati's employment.

On January 19, 2021, after obtaining a Notice of Right to Sue from the EEOC, Kastrati timely filed this action, which asserted claims of discrimination and retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, and the New York City Human Rights Law. (*Id.* at 3-4.) He also brought a claim for judicial dissolution of Novita pursuant to New York Business Corporation Law § 1104-a(a)(1) to obtain repayment of his investment in the business.

Defendants filed a Motion for Judgment on the Pleadings as to the BCL claim in response to the Complaint. (Def.'s Mot. Summ. J., ECF No. 29.) On June 11, 2021, the Honorable Lorna G. Schofield dismissed Plaintiff's BCL claim without prejudice based on abstention grounds, leaving only the discrimination and retaliation claims. (ECF No. 38.)

The parties engaged in substantial discovery including the exchange of thousands of documents (including video) and nine depositions. The parties also litigated several disputed discovery issues. (ECF Nos. 53, 73, 94.) Specifically, Plaintiff noted deficiencies in Defendants' production and were successful in obtaining additional documents after bringing a discovery motion. The parties also engaged in two mediations. At the outset of the case, they attended a mediation before a mediator affiliated with the Court's court-annexed mediation program. That mediation was unsuccessful. After the completion of substantial discovery, the parties attended a settlement conference before the undersigned. That conference led to a settlement, except with respect to the issue of attorneys' fees. Thus, the parties agreed to submit the attorneys' fee dispute to the undersigned for resolution. The parties have consented to my jurisdiction for all purposes pursuant to 28 U.S.C. 636(c) and Fed. R. Civ. P. 73. (ECF No. 104.)

## **LEGAL STANDARD**

A district court exercises "considerable discretion" in awarding attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see also Millea v. Metro-North R. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *TufAmerica Inc. v. Diamond*, 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016), *reconsideration*

*granted in part*, 2016 WL 3866578 (S.D.N.Y. July 12, 2016), *and on reconsideration in part*, 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)) (internal citation omitted).

Attorneys' fees are awarded by determining a presumptively reasonable fee, or a "lodestar," reached by multiplying a reasonable hourly rate by the number of hours reasonably expended. *TufAmerica Inc.*, 2016 WL 1029553, at *3 (citing *Millea*, 658 F.3d at 166); *see also Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). When evaluating hourly rates, the Court looks at "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson,* 652 F.3d at 289 (internal citations and quotation marks omitted). The Second Circuit's "forum rule" generally requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 290 (internal citation and quotation marks omitted); *see also TufAmerica Inc.*, 2016 WL 1029553, at *5 (rate must be "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation") (internal citation and quotation marks omitted). Courts in this district also have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate. *In re Stock Exchanges Options Trading Antitrust Litig.*, 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006). Finally, the Court may adjust base hourly rates to account for case-specific variables. *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019); *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 183-184.

When evaluating hours expended, the Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley v.* Pataki, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City of*

4

*Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam)).  In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Kirsch v. Fleet St., Ltd*., 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord Alicea v. City of New York,* 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017) (quoting *Kirsch*, 148 F.3d at 173); *TufAmerica Inc.*, 2016 WL 1029553, at *3.

The Court also looks at the nature of the legal matter and reason for the fee award in considering what is a reasonable rate and reasonable time spent on a matter.  Complex cases requiring particular attorney skills and experience may command higher attorney rates, as may cases requiring retention of a firm with the resources needed to prosecute a case effectively.  *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 185-87.

The statutes pursuant to which Plaintiff sued provide for an award of attorneys' fees to the prevailing plaintiff.  *See* 42 U.S.C. § 2000-e-5(k); 42 U.S.C. § 1988(b); *Soliman v. Ebasco Servs. Inc.*, 822 F.2d 320, 323 (2d Cir. 1987) ("[I]ndependent of his client, an attorney has no personal right to an award of statutory attorney's fees under [Title VII]."); *DeCurtis v. Upward Bound Int'l, Inc*., 2011 WL 4549412, at *6 (S.D.N.Y. Sept. 27, 2011) (recognizing that NYCHRL provides for attorneys' fees).

**AWARD SOUGHT**

The Vladeck Firm is a well-known and reputable plaintiffs' employment firm.  All of the lawyers who worked on the matter focus exclusively on employment law.  (Iadevaia Decl. 7, ECF No.

5

116.) The matter was led by partner Jeremiah Iadevaia, who had been practicing fifteen years at the start of this action (having graduated from Northeastern University School of Law in 2006). Iadevaia clerked for the Honorable Debra Freeman in this District after law school and went on to serve as lead counsel for numerous employment cases, including more than 40 filed in New York federal courts.  (*Id.* at 9.)  He also is an active member of the New York City Bar Association, among other organizations, serving on its Employment Law Committee, and speaks and writes on employment law topics.   His regular hourly rate is $650.  (*Id.* at 8.)

Several associates also worked on the matter.  The associates who spent the most time on the matter were Emily Bass and Susanna Barron, both 2018 graduates of Harvard Law School and both whose hourly rate is $325.  (*Id.* at 9-10.)  Both graduated with honors from law school.  Bass worked on the matter from March 2020 to March 2021 and from August 2021 to the end of the case.  Barron commenced working on the case in March 2021 when Bass became unavailable and then continued working on the case until it resolved.  (*Id.*)  Tavi Unger, a 2018 graduate of Yale Law School, also worked on the matter from February 2019 until January 2020, when she left the Vladeck Firm.  Her hourly rate is also $325.  (*Id.* at 10.)  Finally, Brandon White, a 2020 graduate of Fordham Law School worked on the matter from December 2020 until February 2021.  (Iadevaia Decl. 11.)  White primarily provided researching and drafting assistance on the Complaint.  His hourly rate is $300.  (*Id.*)

In addition to the above, the Vladeck Firm utilized law student clerks to perform research. These law students included Olivia Davis and Kenneth Crouch.  Their hourly rate is $150.  (*Id.*) Several paralegals also assisted on the matter including Connor Hoffman, Rebecca Popkin, Mohammad Shah, and Kathleen Hoban.  Their hourly rate is $125.  (*Id.*)

In total, the above lawyers and staff worked a total of 929.75 hours broken down as follows:

6

- Iadevaia:   249.25        Law Clerks:   16.75
- Barron:     243.50        Paralegals:   40.25
- Bass:       271.75
- Unger:      62
- White:      6

Iadevaia spearheaded settlement negotiations throughout the case and conducted several key depositions. (Iadevaia Decl. Ex. A.) Third-year associates assisted in producing and reviewing documents, prepared for depositions and took six of the nine depositions conducted by Plaintiff. (*Id.*) Approximately 30 hours were spent among three attorneys on conducting Fregonese's and Yoshida's depositions. Plaintiff's counsel spent approximately 60 hours pursing issues with Defendants' document production including meeting and conferring, drafting deficiency letters and moving to compel in court through letter motions. Plaintiff also seeks time for 23 hours of research, 16.75 hours for time spent responding to Defendants' stock split, and 14.75 hours on preparing and seeking permission to file an amended complaint after the stock split. (Iadevaia Decl. 5-6; Iadevaia Decl. Ex. A.) Approximately 40 hours were expended on two mediations among several attorneys. The records also show that multiple attorneys spent a total of about 25 hours to review and analyze Defendants' document production.

The vast amount of work done on the case was performed by third-year associates. Iadevaia spent about 27% of the total hours on the case, whereas law clerks and paralegals spent about 6% of the total hours on the case. The total fees sought are $358,962.50. (Iadevaia Decl. Ex. A.)

Plaintiffs also seek reimbursement for $24,306.27 in costs consisting of printing costs ($78.95), online research ($11.50), transportation (late night cabs in the amount of $177.45), express mail ($47.78), messenger service ($30.00), and electronic discovery ($8,111.06). (Pl. Br. 20-21.)

Iadevaia submitted an affidavit appending contemporaneous time records and disbursements supporting the request for fees and costs. (Iadevaia Decl. Ex. A.) He also attested that the fees charged are those charged to and paid by other clients of the firm, although in this case, Plaintiff's counsel agreed to work on a contingency basis. (Pl. Br. 14.)

Plaintiff's counsel also reserves the right to file a separate application for fees incurred in making this fee application – though that application is not before the Court.

## DISCUSSION

**1. Hourly Rates**

Defendants do not dispute the hourly rates sought by Plaintiff's counsel. And, indeed, the rates sought are in line with those awarded in this District in employment cases, particularly for attorneys of the caliber of those at the Vladeck Firm and based on the results obtained for Plaintiff. *Powell v. Metro One Loss Prevention Servs. Grp.*, 2015 WL 9287121, at *7 (S.D.N.Y. Feb. 5, 2015) *report and recommendation adopted*, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (awarding $650 to former Vladeck partner); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544-45 (S.D.N.Y. 2008) (awarding $675 to partner of Outten & Golden firm); *DeCastro v. City of New York,* 2017 WL 4386372, at *6 (S.D.N.Y. Sept. 30, 2017) ("Courts in this district generally award fees at hourly rates between $150 and $275 for junior associates at law firms specializing in civil rights"); *Gulino v. Bd. of Educ. of City Sch. Dist. Of New York*, 2022 WL 1754266, at *4 (collecting cases and finding $650 for partner, $350 for junior associate "in line with rates recently awarded in this District" in civil rights case); *HomeAway.com, Inc. v. City of N.Y.*, 523 F. Supp. 3d 573, 597-99 (S.D.N.Y. 2021) (awarding rates of $650 for partner with extensive civil rights experience, $600 for partner with less experience in this area, $500 for counsel, $400 for senior

associates and $375 for mid-level associate in a complex civil rights case under 42 U.S.C. § 1988); *Euro Pac. Cap., Inc. v. Bohai Pharms. Grp. Inc.*, 2018 WL 1229842, at *9 (S.D.N.Y. Mar. 9, 2018), *report and recommendation adopted*, 2018 WL 1596192 (S.D.N.Y. Mar. 28, 2018) (reducing paralegal rate to $150); *Long v. HSBC USA Inc.*, 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) (finding that rates of $100 to $150 for paralegals are reasonable); *TufAmerica Inc.,* 2016 WL 1029553, at *6 (reducing the requested rate for paralegals to $150 to $175); *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 659 (S.D.N.Y. 2019) (noting that $150 is consistent with the hourly rate for law clerks in the Southern District).  The Court also notes that paying clients pay the Vladeck Firm the rates cited – the best evidence that the rates are appropriate.  Thus, the rates sought are reasonable.

**2. Hours Expended**

Defendants primarily complain that the hours spent were not reasonable.  (Def. Br. 1.)  They complain about excessive billing by multiple attorneys on discrete tasks and vague billing entries. (*Id.* at 7.)  They argue the matter was not staffed efficiently insofar as multiple associates worked on the matter at the same time, leading to duplication of tasks and inefficiencies.  They also complain that Plaintiff is not entitled to recover fees in connection with time spent on the amended complaint (which was never filed) and in connection with the corporate dissolution and stock split. (*Id.* at 11-12.)  For example, in early 2022, three attorneys simultaneously drafted and edited the proposed amended complaint – spending 8 hours to merely add acts of retaliation to a complaint that had already taken 23 hours to prepare. (*Id.* at 7-8.)  Defendants complain that three attorneys spent 30 hours preparing for and taking two depositions.  (*Id.* at 8.)  Similarly, they complain that 40 hours of attorney time for two mediations was excessive, as was 23 hours on discovery deficiencies and 25 hours on review of Defendants' document production.  Defendants also point to a number

9

of entries they contend are vague, such as "Review of Docs" without explanation of the type or subject of the documents. (Def. Br. 8-11.) They also point out vague entries related to statute of limitations and other research. They have identified approximately $42,000 in vague billing entries. (*Id.* at 9.) They identify approximately $15,500 spent on tasks associated with the stock split. Due to all of the above, they seek a 30% across-the-board cut in the fees requested. (*Id.* at 11.) Defendants do not contest the costs sought.

For their part, Plaintiff's counsel responds that they have already voluntarily written off time for when multiple attorneys attended a call or conference and work associated with the stock split, amounting to a 15% cut in their actual fees. (Pl.'s Reply Br. 1.) Hence, they object to any further reduction. They argue there is no "per se" rule that it is improper to staff a case with multiple attorneys and that there was overlap of associates for only approximately one year of the litigation. (*Id.* at 2.) Plaintiff's counsel argue that for the majority of the time, the case was staffed with one partner, one third-year, and law clerk/paralegal support, with partner time amounting to less than one-third of time spent on the case. (*Id.* at 3.) They also argue that use of third-year associates to do the bulk of discovery and conduct six out of nine depositions was cost-effective and appropriate staffing. Plaintiffs' counsel also distinguish cases cited by Defendants that involved cases that were inappropriately staffed with senior lawyers performing the bulk of the work or that do not involve the complex employment issues present in this case, such as whether Plaintiff was an employee after he became a minority shareholder in the company. (*Id.* at 2-3.) Plaintiff's counsel also defends their billing entries arguing that they are not required to go into more detail for every minute expended and cite cases declining to reduce time for vagueness. (*Id.* at 5.) Finally, Plaintiffs' counsel contend that they already excluded 73 hours for time devoted solely to the BCL claim that was dismissed but argue that the remaining time that includes research related to the

initial filing of the complaint and the stock split assessing how that action also constituted retaliation in violation of the employment laws should be compensable. (*Id.* at 7-9.)

Having carefully reviewed the bills and considered the parties' respective arguments, the Court finds that the hours expended were excessive to some extent and the fee award should be reduced, but not by the amount sought by Defendants. To start, the Court agrees that it was inefficient to have two third-year associates billing simultaneously for certain tasks. From the Court's own assessment, the staffing arrangement appears to have led Bass to expend close to $10,000 in multi-attorney calls/conferences alone. (Iadevaia Decl. Ex. A.) The Court notes that all of the calls were billed in quarter hour increments even though it appears that not all of the calls should have taken fifteen minutes. The quarter-hour billing exacerbated the impact of the multi-associate staffing on the case. At the same time, the Court appreciates that Plaintiff's counsel did not seek reimbursement for all attorneys on the calls. Still, additional reduction is appropriate due to the inefficiencies and billing conventions.

The time spent on discovery disputes was excessive, as was the time spent drafting the complaint and amended complaint. *See DeCastro,* 2017 WL 4386372, at *7) (finding that plaintiff's counsel billed excessive hours where they spent over 100 hours in the preliminary stages of the case "including 21 hours for drafting and editing the initial and amended complaints"). The 30 hours that Vladeck Firm spent preparing for and conducting two depositions was more than needed. Much of the preparation for the two co-owners of the business should have overlapped, leading to efficiencies such that the total prep time should have taken no more than eight hours. There was no need to expend the amount of time on some of the tasks, as exemplified above, to obtain the result achieved – which the Court agrees

was a good result for the Plaintiff.  The Court credits the Vladeck Firm's excellent advocacy; however, given this Court's knowledge of corporate scrutiny of outside counsel fees and commonplace rules prohibiting billing for internal conferences, billing in quarter hours, and multi-attorney staffing, it is highly unlikely counsel would be able to bill a client for all of the conferences and duplicates of work evident in the billing.  *See Pascuiti v. New York Yankees,* 108 F. Supp. 2d 258, 271 (S.D.N.Y. 2000) (stating that time spent on internal conferences is "harder to verify and more likely to be excessive."); *Ansoumana v. Gristede's Operating Corp.,* 2004 WL 504319, at *4 (S.D.N.Y. Jan. 7, 2004) (finding that "too many O&G lawyers billed for services, and too much time was expended in briefings and meetings of too many people"); *see also Cooper v. Sunshine Recoveries, Inc.,* 2001 WL 740765, at *3 (S.D.N.Y. June 27, 2001) (reducing hours for excessive inter-office communications); *Gatti v. Cmty. Action Agency of Greene Cnty., Inc.,* 263 F. Supp. 2d 496, 519-20 (N.D.N.Y. 2003) (same), *aff'd sub nom. Gatti v. Cmty Action of Greene Cty., Inc.*, 86 F. App'x. 478 (2d Cir. 2004).

The hours spent on researching and drafting an amended complaint to include plaintiff's rights as a shareholder were also excessive.  The Plaintiff may be awarded fees for time spent on unsuccessful claims where they were interrelated to successful claims and required essentially the same proof.  *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 520 (S.D.N.Y. 2015).  Though the amended complaint was not filed, the amendments concerned additional retaliation and were interrelated to the litigated claims and thus compensable as a general matter.  However, as noted above, the time spent was excessive.  Similarly, the time spent researching the New York Business Corporation Law ("BCL") is not all compensable.  The Court

is persuaded that some research was overlapped with what was needed to pursue the stock-split retaliation theory, but not the amount of time spent, which was excessive.

Similarly, the time spent preparing for and attending mediation was excessive. This Court limits the length of pre-mediation statements to three pages to avoid attorneys' expending excessive time in preparation. Further, the mediations themselves were less than two full days. In sum, the preparation and attendance should have taken at least ten hours less than it did. *See Kizer v. Abercrombie & Fitch Co.,* 2017 WL 9512408, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017) (billing 9 hours to prepare for a court conference was excessive); *Murray v. Mills,* 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (4 hours to prepare for a settlement conference was "excessive and unreasonable").

Courts in this District have substantial discretion when awarding fees and may apply a percentage reduction to address overbilling issues. *Lilly,* 934 F.3d at 237-38 (approving 10% cut); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (approving percentage-based reduction in fees as practical means of "trimming fat"); *U.S. Football League v. Nat'l Football League,* 887 F.2d 408, 415 (2d Cir. 1989) (approving percentage-based reduction in fees); *Severstal Wheeling, Inc. v. WPN Corp.*, 2016 WL 1611501 (S.D.N.Y. Apr. 21, 2016) (imposing 10% reduction to account for various billing concerns and inefficiencies). Although Defendants seek a thirty-percent cut, the Court finds that such a cut is inappropriate and would deprive Plaintiff's counsel of fees for legitimate and reasonable hours expended. Instead, the Court finds that a 10% cut is appropriate in this instance. This results in a reduction of the total amount sought by $35,896.25 for a total fee award of $323,066.25.

3. Costs

Reasonable costs include those "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation and quotation marks omitted); *see also Torres v. Gristede's Operating Corp.*, 2012 WL 3878144, at *5 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (affirming costs awarded, including for out-of-town travel, meals, photocopying and other expenses). Defendants here do not challenge the costs sought by Plaintiffs and the Court otherwise finds them to be appropriate. Accordingly, the Court awards Plaintiffs' counsel $24,306.27 in costs.

## CONCLUSION

For the reasons set forth above, Plaintiffs' application for fees is granted as modified above. Plaintiffs are awarded $323,066.25 in fees. Plaintiff's application for costs in the amount of $24,306.27 is granted.

**SO ORDERED**

Dated: January 13, 2023
      New York, New York

_Katharine H. Parker_
KATHARINE H. PARKER
United States Magistrate Judge